UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| JASON SHAFFER, *Individually and on behalf of others similarly situated*, | § § § § § | |
| *Plaintiff*, | § § | |
| v. | § § | CIVIL ACTION H-14-2966 |
| M-I, LLC, *d/b/a* MI SWACO, | § § § | |
| *Defendant*. | § | |

## ORDER

Pending before the court is an opposed motion for conditional certification filed by the plaintiff Jason Shaffer, individually and on behalf of others similarly situated, asserting claims against defendant M-I, LLC ("MI"). Dkt. 27. After reviewing the motion, response, reply, other relevant filings, and applicable law, the court is of the opinion that Plaintiff's motion for conditional certification should be DENIED.

### I. BACKGROUND

This is a Fair Labor Standards Act ("FLSA") case involving overtime compensation. Shaffer was a Rotating Control Device Operator ("RCD") employed by M-I in its Strike Force Operations Group from December 2012 to December 2013. Dkt. 29 at 9. Prior to working in the Strike Force Operations Group, Shaffer was employed by Smith International, Inc., which is a related entity to M-I. *Id.* RCD equipment is used to maintain well pressure during different stages of production. Dkt. 27, Ex. 1 at 2. RCD operators are responsible for rigging up, operating, and rigging down the RCD equipment. *Id.* at 3. The Strike Force is a specialized unit within M-I that specializes in high-end technology and worldwide operations. Dkt. 29 at 11. Shaffer claims that he was required to

work at least 12 hours a day, often 7 days a week, when assigned to operate an RCD at a well-site, which resulted in at least 44 hours of overtime per week. Dkt 27, Ex. 1 at 4. Despite the amount of overtime, Shaffer was paid a salary and a day rate. *Id.* A day rate is a bonus paid to RCD operators when they performed work in the field. Dkt. 27 at 8, n. 2.

Shaffer seeks conditional certification of a collective action consisting of "[a]ll Field Specialists working as RCD Operators, Control System Technicians and DPM Field Specialist Trainees employed by MI in the past 3 years who were paid a salary and a bonus" Dkt. 27 at 8. Shaffer alleges that both RCD operators and Control System Technicians ("CSTs") perform primarily the same job functions and are similarly compensated. Dkt. 27-1 at 3–4.

M-I opposes Shaffer's motion on the grounds that he has failed to show that there are similarly situated putative class members, or that there is sufficient interest to justify certification of a collective action. Dkt. 29 at 7. M-I claims that "RCD operators and CSTs are not amenable to one class." *Id.* M-I states that RCD operators are "responsible for planning the layout of all RCD equipment at the rig, which is often unique to each rig." *Id.* at 9. RCDs are "involved in drafting the joint safety analysis and plan for each rig" and "[o]nce at the rig, the RCD Operator is responsible for being on the floor and supervising members of the rig crew in placing the RCD equipment." *Id.* In contrast, M-I claims that CSTs "spend the vast majority of their time sitting in a control room, monitoring computer displays of the status and operation of managed pressure devices." *Id.* at 10. M-I also claims that RCD operators assigned to Strike Force have unique abilities suited to working internationally, and they perform inherently different job duties than other RCD operators who work only in the United States. *Id.* at 11. M-I states that RCD operators who support land rigs in the United States are compensated on an hourly basis, as opposed to RCD operators in Strike Force, who are paid a salary and a day rate. *Id.* at 23.

2

Secondly, M-I claims that Shaffer has not proven that there is a sufficient interest to justify certification. Dkt. 29 at 7. Shaffer's suit was filed on October 17, 2014, and after receiving two extensions to file the motion for conditional certification, Shaffer secured only one consent to join the action by the August 24, 2015 deadline to file the motion with the court. Dkt. 1; Dkt. 29 at 16. M-I has filed a motion to dismiss the consent of Vincent Jones submitted to the court by Shaffer on October 28, 2015. Dkt. 36. M-I alleges that Jones "does not meet the Plaintiff's proposed class definition because he was designated and paid as non-exempt, he was an ES Specialist rather than an RCD Operator, Control Systems Technician, or DPM Field Specialist Trainee, and he did not work within the DPM subsegment." *Id.* at 2.

## II. LEGAL STANDARD

Section 207(a) of the FLSA requires covered employers to compensate nonexempt employees at overtime rates for time worked in excess of forty hours per week. 29 U.S.C. § 207 (a) (2012). Section 216(b) creates a cause of action against employers who violate the overtime compensation requirements. *Id.* at § 216 (b). Section 216(b) also permits an employee to bring a collective action lawsuit against an employer on "behalf of himself . . . and other employees similarly situated." *Id.* at § 216 (b). Employees who wish to participate in a § 216(b) collective action must affirmatively "opt in" to the action by filing a written consent with the court. *Id.* The "opt-in" procedure of § 216(b) illustrates its "fundamental, irreconcilable difference" from a class action under Federal Rule of Civil Procedure 23(c); in a Rule 23 proceeding, persons within the class description are automatically considered class members and must "opt out" of the suit if they do not wish to participate. *LaChapelle v. Owens–Illinios, Inc.*, 513 F.2d 286, 288 (5th Cir. 1975).

The Fifth Circuit has declined to adopt a specific test to determine when a court should certify a class or grant notice in a § 216(b) action, but most federal courts (including this court) have

adopted the *Lusardi* test.  *Badgett v. Tex. Taco Cabana, L.P.*, No. H–05–3624, 2006 WL 2934265, at *1–2 (S.D. Tex. Oct. 12, 2006).  Under the *Lasardi* test, a district court engages in a two-step analysis to determine whether the potential plaintiffs are "similarly situated." *Badgett*, 2006 WL 2934265, at *1.

The two stages of the *Lusardi* test are the "notice stage" and the "decertification stage." *Id.* At the notice stage, the court makes a decision, usually solely based on the pleadings and any submitted affidavits, whether to certify the class conditionally and give notice to potential class members. *See Mooney v. Aramco Servs*, 54 F.3d 1207, 1213 (5th Cir. 1995).  At this stage the court applies a "fairly lenient standard," because there is often minimal evidence available. *Id.* at 1214.  Courts, in fact, "appear to require nothing more than substantial allegations that putative class members were together the victims of a single decision, policy or plan ." *Id.* (quoting *Sperling*, 118 F.R.D. at 407).  Thus, notice stage analysis typically results in conditional certification of a representative class. *Badgett*, 2006 WL 2934265, at *1.  After conditional certification, the "putative class members are given notice and the opportunity to 'opt-in.'" *Mooney*, 54 F.3d at 1214.

After conditional certification is granted, the action proceeds as a representative action. *See id.*  The second stage–the "decertification stage"–is typically precipitated by the defendant filing a motion to decertify after the opt-in period has concluded and discovery is largely complete. *Id.* "At this stage, the court has much more information on which to base its decision, and makes a factual determination on the similarly situated question." *Id.*  If the court finds the claimants are no longer made up of similarly situated persons, it decertifies the class and dismisses the opt-in plaintiffs without prejudice. *Id.*  If the class is still similarly situated, the court allows the collective action to proceed. *Id.*

A "decision to certify, even if subject to correction at the decertification stage, is not without consequences" as "[t]oo much leniency at the notice stage can lead to a 'frivolous fishing expedition conducted by the plaintiff at the employer's expense'" and "extreme leniency at the notice stage can result in conditional certification that must later be revoked at the eve of trial . . . when it becomes obvious that the manageability concerns make collective action impossible." *Lang v. DirecTV, Inc.*, No. 10–1085, 2011 WL 6934607, at *6 (E.D. La. Dec. 30, 2011) (citations omitted).

While the notice stage standard is lenient, it is not automatic. *Badgett*, 2006 WL 2934265, at *2. The plaintiff bears the burden of making a preliminary factual showing that a similarly situated group of potential plaintiffs exists. *Id.* To establish this, the plaintiff must make a minimal showing that: "(1) there is a reasonable basis for crediting the assertion that aggrieved individuals exist; (2) those aggrieved individuals are similarly situated to the plaintiff in relevant respects given the claims and defenses asserted; and (3) those individuals want to opt in to the lawsuit." *Maynor v. Dow Chem. Co.*, No. G–07–0504, 2008 WL 2220394, at *6 (S.D. Tex. May 28, 2008) (citing *Prater v. Commerce Equities Mgmt. Co.*, No. H–07–2349. 2007 WL 4146714, at *4 (S.D. Tex. Nov. 19, 2007); *Simmons v. T–Mobile USA, Inc.*, No. H–06–1820, 2007 WL 210008, at *5 (S.D. Tex. Jan. 24 2007)).

### III. ANALYSIS

#### A. Conditional Certification Analysis

The first and third steps of the conditional certification inquiry require the court to determine whether other aggrieved individuals exist who actually would like to opt in to the lawsuit. Shaffer alleges that RCD operators and CSTs work under the same conditions, perform similar job duties, and are both compensated by salary and a day rate. Dkt. 27–1, Ex. 1 at 4. Although M-I argues that RCD operators and CSTs are dissimilar, they do acknowledge that "CSTs are paid on a salary basis

5

and receive additional compensation." Dkt. 29 at 11. The similar compensation structure of these two groups, along with Shaffer's allegations regarding the similar duties of RCD operators and CSTs is sufficient evidence to satisfy the first prong. Therefore, Shaffer's affidavit provides a reasonable basis to credit his assertion that other aggrieved individuals could exist. Dkt. 27–1, Ex. 1.

At the notice stage, courts generally require a plaintiff to "do more than show the mere existence of other similarly situated persons, because there is no guarantee that those persons will actually seek to join in the lawsuit." *Ali v. Sugarland Petroleum*, No. 4:09-cv-0170, 2009 WL 5173508, at *4 (S.D. Tex. Dec. 22, 2009). In support of the third prong (i.e., that individuals actually want to opt in), Shaffer relies on a statement made by the court in *Walker v. Honghua America, LLC*,: "[m]any courts have determined that plaintiffs do not need to present evidence that potential opt-in plaintiffs desire to opt-in." *Walker v. Honghua Am., LLC*, 870 F. Supp. 2d. 462, 471–72 (S.D. Tex. 2012) (Ellison, J.); *see also Villarreal v. St. Luke's Episcopal Hosp.*, 751 F. Supp. 2d 902, 915 (S.D. Tex. 2010) (Johnson, J.) ("The court agrees that a plaintiff need not present evidence at this stage of the third element, that aggrieved individuals actually want to opt in to the lawsuit."). However, in *Walker,* eight named plaintiffs sought conditional certification, and the court stated that "[t]he litigation ha[d] already attracted numerous new Plaintiffs." *Walker*, 870 F. Supp. 2d at 472. Additionally, the court noted that "[o]ther courts require a showing of at least a few individuals [who] want to join." *Id.; see also Simmons*, 2007 WL 210008, at *9 (Atlas, J.) ("The court concludes that a showing is necessary that at least a few similarly situated individuals seek to join the lawsuit."). Finally, this court ruled in *Yoakum v. PBK Architects, Inc.*, that only one consent to join the lawsuit is insufficient for purposes of satisfying the third element. *Yoakum v. PBK Architects, Inc.*, 2010 WL 4053956, at *5 (S.D. Tex. Oct.14, 2010) (denying conditional certification).

Shaffer's evidence in support of his claim that other aggrieved individuals actually want to opt in to the lawsuit is sparse. Shaffer's affidavit, which is attached to his motion for conditional certification, alleges that he has spoken with his coworkers about the nonpayment of overtime hours. He states that "[he] know[s] that others would be interested to learn that they too may recover unpaid back wages from MI." Dkt. 27, Ex. 1 at 5. Shaffer filed his original complaint on October 17, 2014. Dkt. 1. He requested, and was granted, two extensions to file the motion for conditional certification. Dkts. 20, 24. By August 24, 2015, the date the motion for conditional certification was filed, Shaffer had only secured the consent of Shawn Millender, a fellow RCD operator, to join the collective action. Dkt. 27–1. Shaffer has not secured the consent of a CST, or a DPM Field Specialist Trainee. Millender's declaration, Shaffer's claim that others are interested in learning about potential back wages, and the Jones' consent are the only evidence to suggest that other employees actually want to join this lawsuit. Dkt. 27–1. One valid consent to join, an inadequate consent to join,[1] and Shaffer's vague statement that others may exist is insufficient. *See Yoakum*, 2010 WL 4053956, at \*5 (noting that Yoakum did not meet the third prong of the conditional certification inquiry because he only received the consent of one interested party (citing *Sugarland Petroleum*, 2009 WL 5173508, at \*4)); *Morales v. Thang Hung Corp.*, 2009 WL 2524601, at \*3 (S.D. Tex. Aug. 14, 2009) (declining to conditionally certify a class when the plaintiff claimed there were three individuals who wished to join the suit but there was only one consent to join the

---

[1] On Oct. 28, 2015, Shaffer filed a consent to join the class action on behalf of Vincent Jones. Dkt. 35. On Nov. 13, 2015, M-I filed a motion to dismiss the consent of Jones on the grounds that (1) he has never performed any of the jobs Shaffer has included in the putative class and (2) he is a non-exempt employee. Dkt. 36. Shaffer's response to M-I's motion to dismiss is not yet due and the court expresses no opinion on M-I's motion to dismiss.

As currently filed, the court does not give Jones' consent to join the class action any weight. Shaffer has not provided any evidence, affidavit or otherwise, which would indicate that Jones is an aggrieved individual that was a "victim of a single decision, policy, or plan" that also affected the other putative class members. *Sugarland Petroleum*, 2009 WL 5173508, at \*4. "Ultimately, there must be 'some identifiable facts or legal nexus [that] binds the claims so that hearing the cases together promotes judicial efficiency.'" (Rosenthal, J.) (quoting *Barron v. Henry Cty. Sch. Sys.*, 242 F. Supp. 2d 1096, 1103 (M.D. Ala. 2003).

collective action on file with the court); *Badgett*, 2006 WL 2934265, at *3 (not certifying the class when the three plaintiffs had only offered evidence of one additional employee potentially desiring to opt in). Thus, the court cannot conditionally certify the class based on the current record.

Because Shaffer fails to satisfy the third prong, it is unnecessary for the court to determine the second prong (i.e., whether the other RCDs, CSTs, or DPM Field Specialist Trainees are similarly situated.)

**B. Contact Information of Other Putative Class Members**

In *Yoakum*, the plaintiff complained that the defendant refused to provide names and addresses of other potential class members, therefore prohibiting his ability to show that others wanted to join the lawsuit. 2010 WL 4053956, at *6. This court expressed concern about the potential of "putting the cart before the horse" by requiring the plaintiff to prove that others want to join before he is given the opportunity to contact them. *Id.* (quoting *Heckler v. DK Funding*, 502 F. Supp. 2d 777, 780 (N.D. Ill. 2007)). However, the court specifically pointed to Yoakum's inability to discover if there were others interested in joining the collective action due to the fact that the other workers similarly situated to Yoakum worked at different locations and he did not know them. *Yoakum*, 2010 WL 4053956, at *6. Shaffer has not raised this issue nor does he appear to be in the same predicament as Yoakum. In Shaffer's affidavit he admits that he has spoken with his coworkers about the collective action, yet he has only obtained one valid consent to join. Dkt. 27–1, Ex. 1 at 5. Therefore, the court does not deem it necessary to require precertification disclosure of contact information.

## IV. CONCLUSION

For the foregoing reasons, Shaffer's motion for conditional certification of a collective action is DENIED WITHOUT PREJUDICE. Shaffer's motion is denied without prejudice to allow resubmission if Shaffer is later able to submit more persuasive information showing that other similarly situated employees want to join the litigation.

Signed at Houston, Texas on November 19, 2015.

_____
Gray H. Miller
United States District Judge